**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARRIVA MEDICAL LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 16-2521-JEB |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM**

Arriva Medical LLC submits this short, supplemental brief to address two questions posed by the Court at the recent hearing on Arriva's motion for a preliminary injunction.

**1.      Remedy: The Court Should Stay Revocation Until The Administrative Process Required By Regulation Is Complete.**

The Court inquired whether it could address the government's due process violations by requiring that a hearing before an Administrative Law Judge occur before the government's revocation decision takes effect but without requiring the full review procedures mandated under applicable regulations.  *See* 42 C.F.R. §§ 498.5(*l*)(2)–(3), 498.80.  Arriva agrees that because it is entitled to due process *before* it is deprived of its liberty and property interests, the Court should at a minimum grant injunctive relief staying revocation until after the ALJ proceedings are complete.  That remedy, however, while better than nothing, would neither be sufficient to prevent irreparable harm nor appropriate under applicable precedent.  The Court should stay revocation until after the *full* regulation-prescribed appeal process runs its course, for at least four reasons.

*First*, under *Mathews v. Eldridge*, the task for the Court is to assess the "probable value" of "additional or substitute procedural safeguards," the "risk of an erroneous deprivation," and the respective private and government interests at stake.  424 U.S. 319, 335 (1976).  Identifying "the specific dictates of due process," *id.*, as the "particular situation" of this case "demands," *id.* at 334, thus requires examining (1) the government's interest in revocation before the appeals process concludes; (2) Arriva's and approximately a half million beneficiaries' interests in having Arriva exercise all of its rights to review before the government drives the company out of business; and (3) the probable value of the additional procedures that Arriva is requesting.

All factors weigh decisively in favor of granting a stay until after Arriva is able to complete the full review process provided by law.  The government has no more interest in revoking Arriva's Medicare privileges after an ALJ hearing than it does before.  The only interest it has articulated is a general programmatic one, and the government has not argued that this bureaucratic interest would be any stronger after an initial hearing before an ALJ.  *See Dialysis Clinic, Inc. v. Leavitt*, 518 F. Supp. 2d 197, 204 (D.D.C. 2007) (an argument "is forfeit[ed]" if "not raise[d]").  Moreover, the government's bureaucratic interests are dwarfed by the irreparable harms faced by Arriva and the beneficiaries it serves, and the threat of those harms will remain until the full administrative process has run its course.  *See* Op. Br. 37–43.

*Second*, granting a stay until all appeals are exhausted is most respectful of the judiciary's proper role.  The Court should not take it upon itself to craft what it believes to be a sufficient procedural remedy, because the required process is set forth in the statute and regulations.  As the government concedes, that process is "comprehensive and exclusive."  ECF No. 18, at 3.  The government has no authority to prevent Arriva from exercising its review rights.  But the inescapable problem is that revocation here threatens to impose a corporate death sentence,

allowing the government to accomplish indirectly what it is prohibited from accomplishing directly — evading judicial review of its decision to impose a draconian remedy for technical billing errors amounting to 0.0003% of the millions of claims submitted by Arriva. *Cf. Elrod v. Burns*, 427 U.S. 347, 359 n.13 (1976) (government "may not seek to achieve an unlawful end either directly or indirectly"). If a stay is not granted, or if the stay lasts only for some portion of the review process, there is a substantial risk that the government's unlawful actions will evade review because Arriva will be driven out of business before it can exhaust its remedies. This is only a less obvious, but no less effective, version of the shell game that the government played at an earlier stage of this case. *See* TRO Br. 3–4, 8, 20. To ensure that the exclusive review procedures that Congress intended are *meaningful*, the Court should ensure that Arriva is able to take advantage of the full appeals process provided by law. *See Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 10 (1942) (courts have stay authority because if Congress has "provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made"). Due process requires nothing less. *See Mathews*, 424 U.S. at 333 ("[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'").

*Third*, granting a stay while Arriva exhausts its appeal remedies is consistent with other cases. An example is Judge Brown's carefully reasoned decision in *New Orleans Home for Incurables, Inc. v. Greenstein*, 911 F. Supp. 2d 386 (E.D. La. 2012). In that case, the government revoked a nursing home's Medicaid license and suspended revocation pending further administrative review, but then sought to terminate the nursing home's provider agreement, which would have driven the nursing home out of business before it could complete the appeals process. In response, the court granted relief, enjoining the Secretary from

terminating the nursing home's provider agreement "unless and until *all* administrative and judicial review and appeals have been exhausted, and only if a final decision supports such action." *Id*. at 413 (emphasis added).   Applying *Mathews*, the court recognized that such relief was warranted in the extraordinary circumstances of that case because termination would "render the suspensive appeal on the licensing revocation action meaningless because [the nursing home] would be out of business before it could fully challenge the . . . license revocation and therefore would deny [the nursing home] its procedural due process rights of review of the . . . license revocation." *Id*. at 404.   The court noted the serious concerns of allowing the Secretary to terminate the employment of 135 people and traumatize a vulnerable population of beneficiaries "if at the end of the appellate process it is determined that the nursing home license, and by extension the Medicaid provider agreement, should not have been terminated." *Id*. at 412.   The court also explained that it did "not perceive how the Secretary could be harmed by reimbursing [the nursing home] for services provided to Medicaid patients, considering [that the government] would have to pay the same amount for benefits of these patients regardless of who their Medicaid provider happens to be." *Id*. at 413.   The same considerations apply here.

*Fourth*, if the Court has any concerns about the length of a stay, the proper response is not to allow the government to evade judicial review by threatening to drive Arriva out of business but to ensure that the government is protected from harm in the interim.   *See*, *e.g.*, Fed. R. Civ. P. 65(c).   The government has pointed to no evidence that Arriva has ever received payment for services provided to deceased beneficiaries.   Nor has it identified any threat that the company might receive payment for services allegedly provided to deceased beneficiaries during the administrative review process.   It has not made any allegation of fraud or fraudulent intent.   Nor has the government asked Arriva to post security, a tacit recognition that it faces no financial

harm.  Even if the Court were to ignore all that, the maximum injury the government could possibly assert is a risk of improperly paying for 0.0003% of Arriva's claims.  To address that concern, Arriva is prepared to place in escrow an amount equal to *ten times* the 0.0003% of the total claims that the government alleges were incorrectly billed until after the review process runs its course — the maximum punitive amount that could be imposed by law consistent with the requirements of due process.  *Cf. BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996) (suggesting that the "relevant ratio [i]s not more than 10 to 1").  That is more than sufficient to protect the government.  It also confirms that any remedy less than a full stay — which would penalize Arriva by requiring it to put at risk millions of dollars each month for the life-saving services it provides to 500,000 beneficiaries — would be unconstitutionally punitive and far out of proportion to the violations alleged by the government.

**2.      Available Relief: The Government Has Many Options Short Of Revocation.**

The Court asked the government whether it has "options short of revoking billing privileges at its disposal" or whether the government's only choice is "either revoke or nothing." Hrg. Tr. 35:6–7, 11.  That question is significant, for only the extreme remedy of revocation poses any risk of driving Arriva out of business before the government's decision is reviewed. The government responded that its only option is to revoke.  *Id.* at 11:12–13.  That is wrong.

The regulation is clear that the government's revocation authority is permissive, not mandatory.  *See* 42 C.F.R. § 424.535(a).  There are many options available.  The government could have notified Arriva of the allegedly problematic claims and might have been able to instruct Arriva to submit a corrective action plan.  *See* 42 C.F.R. §§ 424.535(a)(1), 405.809.  It also could have sought to impose a civil monetary penalty.  42 U.S.C. § 1320a-7a(a)(1)(A), (B) (civil monetary penalty); 42 C.F.R. § 1003.200(a)(1), (2) (civil monetary penalty).  The Office of Inspector General emphasizes that, even when there is an allegation of actual fraud, there are a

"range of administrative options it can exercise," including no action at all, "heightened scrutiny" with monitoring, and corporate integrity obligations.   *See* https://oig.hhs.gov/ exclusions/files/1128b7exclusion-criteria.pdf.

When dealing with other companies accused of far more serious concerns (and where, unlike here, fraud is at issue), the agency and the Justice Department routinely stop short of revocation, choosing instead to impose fines.   *See, e.g.*, Press Release, Healthcare Service Provider to Pay $60 Million to Settle Medicare and Medicaid False Claims Act Allegations, https://www.justice.gov/opa/pr/healthcare-service-provider-pay-60-million-settle-medicare-and-medicaid-false-claims-act (the provider allegedly "knowingly and systematically encouraged false billings by its hospitalists"); Press Release, Community Health Systems Inc. to Pay $98.15 Million to Resolve False Claims Act Allegations, https://www.justice.gov/opa/pr/community-health-systems-inc-pay-9815-million-resolve-false-claims-act-allegations (company accused of "a deliberate corporate-driven scheme to increase inpatient admissions").   That is consistent with the government's commitment to the Supreme Court, where it pledged that revocations are "rare" and "reserved for the most egregious recidivist institutions."   *Shalala v. Illinois Council on LongTerm Care, Inc.*, 529 U.S. 1, 22 (1999) (internal quotation marks omitted).

The agency's commitment and typical practice disappeared in this case.   Rather than giving Arriva a chance to address the government's concerns, the agency chose instead to impose the harshest penalty available.   That draconian sanction for alleged technical billing errors should not be imposed "unless and until all administrative and judicial review and appeals have been exhausted, and only if a final decision supports such action."   *New Orleans Home for Incurables*, 911 F. Supp. 2d at 413.

Dated: February 14, 2017

Respectfully submitted,

 /s/ *Ashley C. Parrish*

Ashley C. Parrish
DC Bar Number: 464683
Kevin M. Dinan
DC Bar Number: 406627
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 200
Washington, District of Columbia 20006
Telephone: (202) 626-2627
Facsimile: (202) 626-3737
Email: aparrish@kslaw.com

Ethan P. Davis
DC Bar Number: 1019160
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1224
Facsimile: (415) 318-1300

*Counsel for*
*Arriva Medical LLC*